**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 17, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP734-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF456

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

EMMA K. SEYMOUR,

    DEFENDANT-APPELLANT.

 

APPEAL from an order of the circuit court for Winnebago County: THOMAS J. GRITTON, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Hagedorn, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Emma Seymour petitioned for leave to appeal a nonfinal order denying her motion for reconsideration of an order denying earlier motions to suppress her un-*Mirandized*[1] confessional statements to police and evidence seized in a search.[2] The circuit court concluded that Seymour was not in custody when she voluntarily gave her statements; that she lacked standing to challenge the search; and that police entered the searched apartment with consent. We affirm because, whether Seymour had standing or not, we conclude that her statement was noncustodial.

¶2 The State charged Seymour with armed robbery, robbery by use of force, and substantial battery, all as a party to the crime, for her role in two July 2017 robberies in Oshkosh. Although some of the robbers wore bandannas over their faces, one of the victims knew who robbed him and gave police their names.

¶3 Six or so police officers went to an apartment building on Pacific Street in Appleton to speak to the suspects. An unrelated tenant let the officers into the common entryway that serviced three apartment doors. On approaching the door of the intended apartment, the woman answering it identified herself as Mabel Santos, and, according to the complaint, invited them inside. Among the others present were Santos's daughter; the daughter's boyfriend, David Vargas; Santos's son, Jose Ferrer; and Seymour, Ferrer's girlfriend. The officers told Santos they wanted to speak with Vargas, Ferrer and Seymour.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] This court granted leave to appeal the order. *See* WIS. STAT. RULE 809.50(3) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise stated.

¶4 Detective Jeremy Krueger briefly spoke with Seymour on the apartment balcony then took her to his department vehicle to continue the interview, allowing her to first put on her shoes. An audio recording reveals that, before questioning her in his car, Krueger told Seymour that she was not in custody or under arrest, that she could leave at any time, and that, if she chose to leave, the car door was unlocked. She stayed. After Seymour admitted to being involved in the robberies, Krueger handwrote a statement for each of the two victims based on the information Seymour provided. Seymour reviewed each statement, told Krueger they were correct, and wrote on the bottom: "I have read over this statement and it is correct." She then was arrested.

¶5 Seymour moved to suppress her statements, arguing that they were involuntary and obtained in violation of *Miranda*. In November 2017, the circuit court held a hearing at which Seymour's motion was "discussed" but no witnesses testified. The hearing was adjourned. At a second hearing a month later, Krueger testified briefly and Seymour moved to suppress all evidence seized as a result of law enforcement's entry into the apartment. She argued that gaining access to the building's common area through another building tenant was an improper civilian-assisted search.[3] Seymour did not have a transcript of either hearing prepared.

¶6 At a third hearing, held on January 17, 2018, the State contested Seymour's standing to challenge law enforcement's entry into the Pacific Street apartment. Seymour objected to standing being raised for the first time. The court concluded that Seymour did not have standing, rejecting as not credible her testimony that she was living in the apartment, as she had given Krueger a

---

[3] Seymour abandons that argument on appeal.

Menasha address. The court also denied Seymour's motion to suppress her statements, reasoning that they were not obtained in violation of *Miranda*, as she was not in custody when she gave them and gave them voluntarily. The court denied her motions in an order dated January 25, 2018.

¶7 Seymour did not seek leave to appeal the January order. Instead, she moved for reconsideration, asserting that the court erred by concluding that she lacked standing to challenge the entry into the apartment. She submitted affidavits from her father and Santos that claimed she was living at the Pacific Street apartment when police searched it. Seymour also contended that the State's failure to raise the standing issue before the third hearing was fatal to its position.

¶8 In addition, Seymour argued that the court improperly limited testimony about the circumstances of law enforcement's arrival at the apartment and interaction with others there. She claimed the information was relevant to whether she was in custody and whether her statement was voluntary.

¶9 By order dated April 5, 2018, the circuit court denied the motion as untimely under WIS. STAT. § 805.17(3) and *State v. Brown*, 2006 WI App 44, 289 Wis. 2d 691, 712 N.W.2d 899. This permissive appeal followed.

¶10 The circuit court's denial of Seymour's reconsideration motion as untimely was clearly erroneous. WISCONSIN STAT. § 805.17(3) applies only to reconsideration motions after bench trials; *Brown* states that a court need not make detailed factual findings when denying a motion for reconsideration. *Brown*, 289 Wis. 2d 691, ¶18. A circuit court has the inherent authority to reconsider a nonfinal order at any time before entry of a final order. *See Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶58, 265 Wis. 2d 703, 666 N.W.2d 38.

4

¶11　We may affirm the court's order on different grounds, however. *See Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995). To prevail on a motion for reconsideration, the moving party must present newly discovered evidence or show that the court made a manifest error of law or fact. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853.

¶12　We will assume without deciding that Seymour had standing to challenge law enforcement's entry into the apartment. Consequently, the affidavits of her father and Santos, which Seymour implausibly contends constitute newly discovered evidence, are immaterial as they go only to standing. The sole issue here is whether her statements to police were custodial.

¶13　Seymour contends the court made a manifest error of law when it denied her the right to present evidence about the circumstances of her statements to Krueger. She sought to elicit testimony about whether police conducted pat-downs of others in the apartment, the ages of the others present, the number of officers and police cars at the scene, and how the officers gained entry to the apartment. Seymour contends the court's rulings misapplied the law that whether a person is in custody for *Miranda* purposes and the voluntariness of his or her statement are determined by the totality of the circumstances. *See State v. Martin*, 2012 WI 96, ¶35, 343 Wis. 2d 278, 816 N.W.2d 270 (custody); *State v. Hoppe*, 2003 WI 43, ¶38, 261 Wis. 2d 294, 661 N.W.2d 407 (statement).

¶14　Krueger testified at the suppression hearing that, on entering the apartment, he did not recall "ordering all of the minor children to put their hands

5

up and do[ing] a pat-down."[4]  The State objected when defense counsel then changed up the question, asking if Krueger recalled *any* officer instructing those present to put their hands up and patting them down.  The court sustained the objection as having "nothing to do with" Seymour's motion regarding her statements.  When counsel argued that at issue was whether Seymour was in custody, the court responded, "She is not a minor child.  That was your question."[5]  It thus is not clear that the relevancy ruling went to the issue of pat-downs or to counsel's characterization of Seymour as a minor.

¶15  Seymour complains that the court committed another error of law by excluding evidence of the ages of the other people questioned and the circumstances surrounding law enforcement's entry into the apartment.  True, a child's age—if known to the officer or objectively is apparent to a reasonable officer—factors into the custody analysis.  *See J.D.B. v. North Carolina*, 564 U.S. 261, 275-77 (2011).  Seventeen-year-old Seymour was not a minor for purposes of a criminal investigation, however.  *See* WIS. STAT. § 938.02(1).  She also makes no case for the relevance of the ages of the others in the apartment to whether she was in custody when she later gave her statements.

¶16  In any event, the court recognized Seymour's age when admitting her statement, saying, "That's a factor."  It noted that there was no evidence, however, that Seymour was "compromised in any way as a 17-year old," she

---

[4] The "minor children"—Vargas, Seymour, and Santos's daughter—were sixteen and seventeen years old.  Ferrer was nineteen.

[5] Seventeen-year-old Seymour was not a minor for purposes of a criminal investigation. *See* WIS. STAT. § 938.02(1).

never said she felt coerced, and "17 doesn't necessarily mean you don't know what is happening."

¶17    The court also did not improperly prohibit testimony about the number of police cars and officers at the scene or the circumstances of law enforcement entering the apartment.  Krueger testified without objection that approximately six officers went into the apartment and that he thought multiple police cars were there.  Although the court sustained objections to questions about how police gained entry into the apartment, there is no evidence Seymour was aware when she gave her statements about the officers' manner of entry into the building or their verbal exchange with Santos before entering her apartment.  She does not persuasively argue that that information was relevant to whether she was in custody or her statement was voluntary.

¶18    Seymour also contends the court's finding, based on its viewing of an officer's body camera video, that it saw no pat-down was a manifest error of fact.  She attached to her suppression motion still photos from the video that she asserted show an officer patting down a person and also provided a police report in which an officer indicated that he patted down Vargas.

¶19    If the court was mistaken that police did not pat anyone down, it was just one factor that played into its analysis as to whether Seymour was in custody for *Miranda* purposes.  "A person is in 'custody' if[,] under the totality of the circumstances[,] 'a reasonable person would not feel free to terminate the interview and leave the scene.'" *State v. Lonkoski*, 2013 WI 30, ¶6, 346 Wis. 2d 523, 828 N.W.2d 552 (citation omitted).  "'[T]he ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" *Stansbury v. California*, 511 U.S. 318,

322 (1994) (citation omitted). This is an objective standard that does not depend on the subjective views of the person being interrogated or the officer conducting the interrogation. *Id.* at 323. Relevant factors include the person's freedom to leave; the purpose, place, and length of the interrogation; and the degree of restraint. *Lonkoski*, 346 Wis. 2d 523, ¶6. Degree-of-restraint factors include whether the person is handcuffed; whether a weapon is drawn, whether a frisk is performed; the manner in which the person is restrained; whether the person is moved to another location; whether questioning takes place in a police vehicle; and the number of officers involved. *State v. Gruen*, 218 Wis. 2d 581, 594-96, 582 N.W.2d 728 (Ct. App. 1998).

¶20 Krueger told Seymour she was not under arrest and was free to leave; she was not restrained or handcuffed; no weapons were drawn; she was not frisked; she apparently willingly accompanied Krueger to his department vehicle to continue the interview and sat in the front passenger seat; and Krueger was the only officer involved in her interview. Assuming for argument's sake that the court was wrong about whether someone else was patted down, we cannot say the error necessarily would have affected its legal conclusion that Seymour was not in custody for *Miranda* purposes.

¶21 Seymour's motion for reconsideration failed to present newly discovered evidence relevant to the issue of custody or to show that the circuit court made a manifest error of law or fact. Her motion was properly denied.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.