STATE of Wisconsin, Plaintiff-Respondent,

v.

Quantae T. HINES, Defendant-Appellant.

Court of Appeals

*No. 2006AP846–CR, 2006AP847–CR, 2006AP848–CR.*
*Submitted on briefs January 3, 2007.*
*—Decided February 21, 2007.*

2007 WI App 39

(Also reported in 730 N.W.2d 434.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christine A. Remington*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. Quantae T. Hines appeals from his reconfinement sentence and from an order denying

his postconviction motion challenging his reconfinement sentence. Because we determine that the trial court erroneously exercised its discretion when it failed to allow Hines to allocute prior to the court imposing its reconfinement sentence, we reverse the trial court's denial of Hines's postconviction motion and remand this case for further proceedings in accordance with this opinion.

## Background

¶ 2.   This is a combined appeal of Hines's reconfinement sentences in three separate cases.[1] The facts of each case will be discussed individually and then as the sentences imposed for each conviction intersected with each other.

*A. Case No. 2006AP846 (Case A)*

¶ 3.   On September 16, 2000, Hines was charged with operating a motor vehicle without the owner's consent, in violation of WIS. STAT. § 943.23(3) (1997–98).[2] Hines pled guilty and on March 19, 2001, Hines was sentenced to eighteen months' probation. On February 8, 2002, Hines's probation was revoked, in part as a consequence of his actions giving rise to Cases B and C discussed below. As a result of the revocation of his probation, on May 8, 2002, Hines was sentenced to five years' imprisonment comprised of two years of initial confinement and three years of extended supervision, consecutive to the sentences imposed for his convictions

---

[1] For clarity, they will be discussed in chronological order, with Case A referring to Case No. 2006AP846, Case B referring to Case No. 2006AP847, and Case C referring to Case No. 2006AP848.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

in Cases B and C.[3] The trial court also found Hines eligible for the Challenge Incarceration Program (CIP).

## B. Case No. 2006AP847 (Case B)

¶ 4. On January 14, 2002, while on probation, Hines was charged with operating a motor vehicle without the owner's consent, in violation of WIS. STAT. § 943.23(3) (1999–2000). Hines pled guilty and on April 1, 2002, was sentenced to five years' imprisonment comprised of two years of initial confinement and three years of extended supervision. The trial court also found Hines eligible for the CIP.

## C. Case No. 2006AP848 (Case C)

¶ 5. On January 16, 2002, Hines was charged with burglary, party to a crime, in violation of WIS. STAT. §§ 943.10(1)(a) and 939.05 (1999–2000). Hines pled guilty, and on April 1, 2002, Hines was sentenced to seven years' imprisonment comprised of three years of initial confinement and four years of extended supervision, to be served concurrently with his sentence in Case B. The trial court also found that Hines was eligible for the CIP.

## D. Initial Confinement (Cases B and C) and Confinement after Probation Revocation (Case A)

¶ 6. During Hines's confinement after revocation, which ran consecutively to his sentences in Cases B and C, Hines was accepted into the CIP. The Department of Corrections (DOC) notified the sentencing court on November 11, 2003, that Hines had successfully com-

---

[3] Sentencing in Cases B and C occurred prior to the resentencing of Hines in Case A, even though the conduct giving rise to his convictions in these cases occurred after Case A.

pleted the CIP and on November 21, 2003, pursuant to WIS. STAT. § 302.045(3m) (2001–02), the trial court converted the remainder of Hines's sentences to extended supervision. Hines was released on November 25, 2003, to extended supervision.

*E. Subsequent Revocation of Extended Supervision and Reconfinement Hearing*

¶ 7.   The DOC subsequently sought revocation of Hines's extended supervision due to Hines's absconding (removing his Electronic Monitoring Program device), numerous rule violations, and ultimately, new criminal charges. A revocation hearing[4] was held before an

---

[4] The "violations prompting revocation" were summarized by Hines's Probation/Parole Agent in a Court Memo to the trial court that would be deciding Hines's reconfinement sentence, and include:

1. [Hines] did, on or about 04/23/05, did [sic] take and drive a blue Chevy SUV without the knowledge or consent of the owner. This behavior is in violation of Probation/Parole Rules #1 signed 07/22/04.

2. [Hines] did, on or about 04/24/05, possess a chrome revolver. This behavior is in violation of Probation/Parole Rules #1 and #12 signed 07/22/04.

3. [Hines] did, on or about 04/24/05, did [sic] remove the license plate from a blue Chevy SUV without the knowledge or consent of the owner of the truck. This behavior is in violation of Probation/Parole Rules #1 signed 07/22/04.

4. [Hines] did, on or about 04/24/05, as party to a crime, take a Green Jimmy Truck without the owner's knowledge or consent. This behavior is in violation of Probation/Parole Rules #1 signed 07/22/04.

5. [Hines] did, on or about 04/24/05, intentionally give Milwaukee Police Officers false information regarding his name and date of birth repeatedly, which hindered their investigation. This behavior is in violation of Probation/Parole Rules #1 and #22 signed 07/22/04.

administrative law judge (ALJ), beginning on June 7, 2005, and concluding on July 7, 2005. The ALJ found that the DOC had proven only allegations one and three and had withdrawn allegation number five. The ALJ then recommended that Hines be reconfined as follows: Case A—2 years, 11 months, 28 days; Case B—1 year, 10 months, 17 days; Case C—3 years, 2 months, 15 days.

¶ 8. The Honorable Karen E. Christenson held Hines's reconfinement hearing on October 13, 2005. In addition to sentencing Hines to reconfinement under

This Court Memo also discussed Hines's adjustment under supervision and noted that his "adjustment was marginal," citing his positive tests for marijuana throughout his period of extended supervision, initial failure to attend AODA treatment programs (though he did eventually successfully complete an AODA treatment program), and the following four major violations by Hines:

(1) On 02/26/04, [Hines] unplugged his EMP unit and threw it in the garbage and on 02/28/04, [Hines] was caught driving without a license . . . .

(2) On 03/31/04, [Hines] cut off his EMP bracelet. And, on 04/04/04, he was again caught driving without a valid driver's license and then gave police a false name . . . .

(3) On 07/07/04, [Hines] failed to report as scheduled. On 07/10/04, he was caught by Milwaukee Police Officers driving without a valid driver's license[. I]initially he cooperated with police but he subsequently led police on a foot chase . . . .

(4) On 04/23/05, [Hines] stole a blue Chevy SUV. While driving the vehicle he got into a street race with another vehicle and fired two shots at the occupants of that vehicle when they began to call him racial slurs. The following day, he was experiencing mechanical problems with the stolen vehicle, so he enlisted the help of a friend and stole a Jimmy Truck from a nearby dealership. He then transferred the license plates from the stolen SUV to the stolen truck. Police came upon the crime seen [sic] at which time [Hines] led them on another foot chase.

At the time the Court Memo was prepared, the charges listed in number (4) above were pending, and Hines had not been convicted of them.

490

Cases A, B and C, the trial court also sentenced Hines for his conviction in Milwaukee County Case No. 05CF2410 (Case D), which arose out of the actions cited in number (5) of the allegations set forth in the Court Memo. *See* n.4, *supra.*[5]

¶ 9. The trial court heard argument by the State and defense counsel, and allowed Hines's fiancée to speak to the court on Hines's behalf. The court then sentenced Hines to the periods of reconfinement recommended by the DOC: Case A—2 years, 11 months, 28 days; Case B—1 year, 10 months, 17 days; Case C—3 years, 2 months, 15 days. After the court had announced the sentence, Hines requested that he be allowed to address the trial court. Hines discussed his responsibilities in the community and requested that if one of the sentences was to be served consecutively to the others, that he be able, instead, to serve all three concurrently. In response, the trial court noted:

> That's all been decided by somebody before me. The original sentencing judges determine whether sentences are to be served concurrently or consecutively. I can't change that . . . .
>
> Apparently two of them are concurrent and one is consecutive, and I don't know how that works out in terms of when you will again be released into the community.

¶ 10. Hines filed identical WIS. STAT. RULE 809.30 postconviction motions in each of the three revocation cases, A through C, claiming that the trial court erroneously failed to allow Hines to allocute before pro-

---

[5] A review of Hines's record on the Wisconsin Circuit Court Access website shows that he pled guilty and was sentenced in Case D; however, Case D is not before us, and will not be discussed further.

nouncing sentence. The trial court denied the motions without a hearing, noting:

> Section 302.113(9), Stats. . . . which authorizes the court to determine the length of reconfinement . . . does not afford a defendant a right to allocution or even a right to a hearing. Nevertheless, in light of . . . State v. Swiams . . . it has become common practice in Milwaukee County to conduct reconfinement hearings. Even assuming *arguendo* that the defendant had a due process right to allocution . . . he was clearly afforded that right . . . . The court considered the defendant's statement but was not persuaded to alter its reconfinement decision. Any failure . . . to ask the defendant before ordering reconfinement whether he had anything to say was harmless . . . .

¶ 11.   Hines also argued in his postconviction motions that the trial court gave the DOC recommendations "excessive deference" and that the court "failed to honor the 'minimum custody' standard." In its decision on the postconviction motions, the trial court stated:

> [T]he . . . court considered the serious nature of the defendant's violations while on extended supervision, his character and rehabilitative needs as demonstrated by his negative behavior during the supervision period and the need to protect the community . . . . [T]he court determined that the Department's recommendation was appropriate. The court finds that it properly considered the [relevant] factors . . . and that it did not erroneously exercise its discretion in any respect.

Hines appeals.

### Standard of Review

¶ 12.   This case involves both a review of a reconfinement decision and the interpretation of statutes.

Interpretation of statutes are questions of law which we review *de novo*. *State v. Brown*, 2006 WI 131, ¶ 18, 298 Wis. 2d 37, 725 N.W.2d 262. The standard of review of a sentencing decision is also well settled. *Id.*, ¶ 19. A trial court "exercises its discretion at sentencing, and appellate review is limited to determining if the court's discretion was erroneously exercised." *Id.* A reconfinement hearing is "akin to a sentencing hearing and, therefore, [is also] reviewed on appeal to determine if there has been an erroneous exercise of discretion." *Id.*, ¶ 20.

¶ 13.  "An erroneous exercise of such discretion occurs 'whenever it appears that no discretion was exercised in its imposition [of the sentence] or discretion was exercised without the underpinnings of an explained judicial reasoning process.' " *Id.*, ¶ 22 (quoting *McCleary v. State*, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971)). If the court, in making its reconfinement decision,

> considered the relevant factors, and not irrelevant or improper ones, and the decision was within the statutory limits, the sentence will not be reversed, unless "it is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances."

*Id.* (quoting *State v. Taylor*, 2006 WI 22, ¶ 19, 289 Wis. 2d 34, 710 N.W.2d 466).

¶ 14.  In reviewing a reconfinement decision in light of a trial court's analysis of the relevant factors, the *Brown* court noted that "[t]reating the reconfinement hearing as a continuum of the sentencing hearing is logical when the same judge is presiding over both the original sentencing hearing and the reconfinement hearing[; h]owever . . . [when] a different judge will do the

493

reconfinement hearing . . . there is no continuum," and thus, a reconfinement judge who did not set the original sentence must review and discuss relevant sentencing factors when deciding on reconfinement. *Id.*, ¶¶ 21, 37–39.

## Discussion[6]

¶ 15.   Hines presents two issues on appeal. First, Hines contends that the trial court erroneously failed to allow Hines to allocute prior to announcing its reconfinement decision. Second, Hines contends that the trial court failed to exercise its discretion when it adopted the DOC "recommendation in its entirety with little independent analysis."

*A. Right to Allocution*

█

¶ 16.   Hines argues that the trial court erred when it failed to allow him to allocute prior to the court announcing its reconfinement decision. Hines argues that whether this "right to allocute" is statutory or constitutional, "the right of allocution [is] not a mere formality"; but rather "a right, and its omission usually require[s] reversal." (Quoting *Nicholas v. State*, 49 Wis. 2d 678, 682, 183 N.W.2d 8 (1971).) Hines argues that because a reconfinement decision is depriving him of his liberty, he must be allowed to allocute before a court announces its decision. Hines next argues that reconfinement hearings are sentencing procedures, citing

---

[6] Briefing in this case concluded prior to the Wisconsin Supreme Court decision in *State v. Brown*, 2006 WI 131, 298 Wis. 2d 37, 725 N.W.2d 262. Accordingly, some of the arguments of the parties are mooted by that decision.

*State v. Jones*, 2005 WI App 259, ¶ 5, 288 Wis. 2d 475, 707 N.W.2d 876, and that contrary to the decision by the trial court on his motion to modify sentence, the error of not allowing Hines to allocute prior to pronouncement of his reconfinement sentence was not harmless, because it is much more likely that a court will consider a defendant's allocution in initially making its decision and much less likely to change its decision even in light of a subsequent allocution by the defendant.

¶ 17. The State first argues that reconfinement decisions are not sentencing decisions and the factors that are relevant for sentencing are not what is important when deciding reconfinement. Rather, what is important is "the offender's behavior since imposition of the sentence." (Citing *State ex rel. Hauser v. Carballo*, 82 Wis. 2d 51, 75, 261 N.W.2d 133 (1978).) The State further supports its argument by noting that a "revocation hearing is not part of the criminal prosecution" and that "the legislature did not change the character of the decision" when it "transferr[ed] the authority to impose confinement time after revocation of extended supervision from the administrative reviewing authority to the judiciary." Finally, the State supports this characterization by noting that reconfinement statutes are in WIS. STAT. ch. 302 (Prisons), rather than WIS. STAT. ch. 973 (Sentencing), and cites *State v. Greve*, 2004 WI 69, ¶ 16, 272 Wis. 2d 444, 681 N.W.2d 479, for the proposition that "[t]he meaning of a statutory provision may be inferred from the context in which the words are placed."

¶ 18. On December 19, 2006, the Wisconsin Supreme Court decided *Brown* and in so doing, reaffirmed the court of appeals decision in *State v. Swiams*, 2004 WI App 217, 277 Wis. 2d 400, 690 N.W.2d 452, which held that a reconfinement hearing is "closely akin" to a

sentencing hearing "because both determine whether a person should be sent to prison and for how long." *Brown*, 725 N.W.2d 262, ¶ 28 (citing *Swiams*, 277 Wis. 2d 400, ¶ 22). The supreme court went on to quote with agreement the *Swiams* court's reasoning that " '[i]n light of the need for meaningful assessment of decisions that deprive persons of their liberty . . . we perceive no reason why a "sentencing" under Wis. Stat. Rule 809.30 should not encompass reconfinement under Wis. Stat. § 302.13(9)(am) (2001–02).' " *Brown*, 725 N.W.2d 262, ¶ 20 (quoting *Swiams*, 277 Wis. 2d 400, ¶ 23); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14 (1950) (The right to be heard is the *sine qua non* of our jurisprudence, even in civil cases.). In its decision in *Brown*, the supreme court also set forth guidelines courts must follow when conducting reconfinement hearings. *Id.*, 725 N.W.2d 262, ¶¶ 5, 46. The court noted that the factors required by *McCleary*, as reaffirmed by *State v. Gallion*,[7] are applicable to reconfinement hearings, particularly if the judge making the reconfinement decision is different from the judge who set the original sentence. *Brown*, 725 N.W.2d 262, ¶¶ 21, 37. Part of the court's consideration at a sentencing includes the defendant's right to allocute *before* the court pronounces its decision. *See* Wis. Stat. § 972.14(2); *Greve*, 272 Wis. 2d 444, ¶ 35.

## B. Adoption of DOC Recommendation

¶ 19.   Hines argues that because the trial court adopted the DOC recommendation without any independent analysis, and without knowing how long that would place Hines in confinement, the trial court erroneously exercised its discretion. The State argues that the trial

---

[7] 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197.

court properly exercised its discretion by reviewing both the reconfinement materials, which included Hines's violations during his time on extended supervision and decisions from the ALJ. The State further argues that the trial court properly exercised its discretion by noting the substantial programming Hines needed and the danger to the community which Hines currently represented.

¶ 20. Because we have determined that Hines has a right to allocution which was denied at his reconfinement hearing, and are, accordingly, remanding for a new reconfinement hearing, we are confident the trial court will apply all the procedures recognized by *Brown* in the new reconfinement hearing. As we remand this matter for a redetermination of Hines's reconfinement, we do not need to decide whether the trial court erroneously exercised its discretion in adopting the DOC recommendation in its entirety. *Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

## Conclusion

¶ 21. For the reasons stated above, we reverse the trial court's denial of Hines's postconviction motion and remand this case for resentencing in accordance with this opinion.

*By the Court.*—Orders reversed and cause remanded.